UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ANDREW HARRISON BLACKBURN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | NO. 2:13-CV-98 |
| | ) | |
| CAPITAL TRANSACTION GROUP, INC., and | ) | |
| CAPTRAN SC LLC, | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the appeal of Andrew Harrison Blackburn ("Blackburn") from the decision of the United States Bankruptcy Court for the Eastern District of Tennessee granting a motion to enforce arbitration filed by the appellee CapTran SC LLC ("CapTran"). For the reasons stated herein, the Bankruptcy Court's order [Docs. 1-9 and 1-12, Record on Appeal] will be affirmed and Blackburn's appeal [Doc. 1, Record on Appeal] will be dismissed.

*ISSUE PRESENTED BY APPELLANT*

> Whether the bankruptcy court had authority to deny a motion to enforce arbitration where the arbitration proceeding seeks to determine the amount of the claim in bankruptcy and whether the claim is dischargeable?[1]

---

[1] It should be noted that the bankruptcy court specifically found that there was no indication that CapTran seeks to obtain a non-dischargeability determination through arbitration.

1

*STANDARD OF REVIEW*

A district court reviews a bankruptcy court's factual findings to determine whether they are clearly erroneous, while legal conclusions are subject to a *de novo* review for correctness. *In re Maughan*, 340 F. 3d 337, 341 (6th Cir. 2003); *In re Caldwell,* 851 F.2d 852, 857 (6th Cir. 1988). The parties agree that issues regarding the extent of the bankruptcy court's legal authority are questions of law that are reviewed *de novo*.[2] Accordingly, the Court will conduct a *de novo* review of the Bankruptcy Court's conclusions of law in this case in regard to the motion to compel arbitration.

*FACTUAL AND PROCEDURAL BACKGROUND*

This Court adopts the procedural and factual background as set out by the bankruptcy court:

> On August 9, 2012, the Debtor filed a voluntary petition for Chapter 7 bankruptcy relief. On November 13, 2012, the Debtor initiated the present adversary proceeding. According to the complaint, the Debtor, a resident of Washington County, Tennessee, was injured on or about November 25, 2001, during the course of his employment as a conductor with CSX Transportation, Inc., rendering him unable to work. In order to seek compensation for his injuries, the Debtor sued CSX under the Federal Employers Liability Act. While that suit was pending, between the years 2003 and 2006 the Debtor entered into a series of eight contracts to secure funding for his living and other expenses, receiving total funds of $80,000. Six of the contracts were with Capital Group. The remaining two were with CapTran. Both entities are South

---

[2] Although Blackburn summarily concludes "[b]ecause the bankruptcy court's decision to lift the stay as to the state court action depends upon the mistaken belief that the court had no authority to refuse to arbitrate, this decision too must be reversed and remanded," he failed to specifically raise this issue as an issue on appeal. Issues that are not listed in a statement of issues on appeal are deemed waived. *Smith v. H.D. Smith Wholesale Drug Corp.* ( *In re McCombs* ), 659 F.3d 503, 510 (5th Cir.2011); *City Sanitation, LLC v. Allied Waste Servs., LLC* ( *In re Am. Cartage, Inc.*), 656 F.3d 82, 90–91 (1st Cir.2011); *Eaton v. Ford Motor Credit Co., LLC,* 2012 WL 3579644, *4 (M.D. Tenn.2012). Therefore, the Court will not address the bankruptcy court's ruling in the order lifting the stay of the state court action.

2

Carolina corporations with their principal places of business in North Carolina.

Under the terms of the various contracts, each of which is entitled "Investment and Security Agreement," in return for the advanced funds the Debtor conveyed to the Defendants an interest in any proceeds he recovered in the CSX litigation, with the interest being described in a variety of terms, including a purchase, a grant of security interest, and an investment. Each agreement provided that it would be governed by South Carolina law. Additionally, each agreement provided for the accrual of interest on the advanced funds with six of the agreements providing for a monthly rate of 4 percent and two of the agreements providing for a flat interest charge of $3,000 if the litigation was settled within 360 days, or $6,000 if settlement occurred thereafter. The last three agreements contained arbitration provisions, whereby the parties agreed to submit any dispute between the parties to binding arbitration in Charleston, South Carolina.

In June 2010, the Debtor settled the CSX litigation. The remaining settlement proceeds of $239,000 are currently being held in trust by the Debtor's attorney. In October 2010, the Defendants sued the Debtor in two separate state court actions in North Carolina in order to obtain payment from the settlement proceeds.

In the first action, Capital Group seeks a judgment based on a breach of contract claim against the Debtor associated with the first five contracts between the parties. According to an affidavit provided by the Defendants, court-ordered mediation was unsuccessfully conducted in this action on August 6, 2012 with trial set for September 24, 2012.

In the second action, CapTran sought a declaratory judgment to enforce the arbitration clauses in the final three contracts entered by the parties. On November 28, 2011, the North Carolina Superior Court entered an order staying that action and ordering the parties to arbitrate the claims and controversies between them. According to an affidavit provided by the Defendants, arbitration proceeded through discovery and was set for hearing on July 31, 2012. The hearing was continued when the Debtor allegedly refused to produce documents related to the CSX settlement.

3

Both Capital Group's state court action and CapTran's arbitration proceeding were stayed by the Debtor's bankruptcy filing. In this adversary proceeding, the Debtor seeks a declaratory judgment that the Defendants do not possess a lien on the settlement proceeds, that the Defendants merely made dischargeable loans, and that the interest charged under the eight contracts was unlawful.

On December 21, 2012, the Defendants filed the two motions that are presently before this court. In support of these motions the Defendants allege that the Debtor's adversary proceeding should be dismissed for lack of subject matter jurisdiction because only the Trustee has standing to object to the Defendants' claims under Federal Rules of Bankruptcy Procedure 3007 and 7001 absent a showing that there will be a surplus in the estate, a showing that the Debtor has failed to make.

Alternatively, the Defendants seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) to proceed with the North Carolina state court action and the South Carolina arbitration. According to the Defendants, cause for stay relief exists under Section 362(d)(1) of the Bankruptcy Code because their claims against the Debtor were ready to be resolved in these proceedings at the time of his bankruptcy filing and the Defendants will be prejudiced if they are not allowed to proceed outside of the bankruptcy case. The Defendants also argue pursuant to 11 U.S.C. § 362(d)(2) that the Debtor has no interest in the settlement proceeds because he assigned them to the Defendants and their claims for principal and interest exceed the amount of the settlement proceeds. According to the Debtor's schedules, the Defendants' claims total $341,000.

*ANALYSIS*

Blackburn contends that the bankruptcy court adopted a "derived exclusively" test mandating arbitration in every case where the proceedings are not derived exclusively from the Bankruptcy Code. In his appeal, Blackburn contends that the Court should adopt the "inherent conflict" test and determine whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code, thus adopting the reasoning of *In re White*

4

*Mountain Mining Co., L.L.C.*, 403 F. 3d 164 (4th Cir. 2005), and *In re Eber*, 687 F. 3d 1123 (9th Cir.2012).

Citing *Javitch v. First Union Securities, Inc.*, 315 F. 3d 619, 624 (6th Cir. 2003), the bankruptcy court concluded that the appropriate initial inquiry is whether "a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of the agreement." The bankruptcy court noted that a similar arbitration provision involving CapTran has been found to be valid by United States District Judge Curtis Collier in *Lee v. CapTran SC LLC*, 2011 WL 2882756 (E.D. Tenn. Mar. 11, 2011). The bankruptcy court also found that the parties' dispute in regard to the illegality of the lien and interest rate provisions did fall within the substantive scope of the arbitration agreements, and therefore, the parties' dispute was subject to arbitration.

The bankruptcy court found that "the determinative inquiry in enforcing the arbitration agreement is whether the proceeding derives exclusively from the provisions of the Bankruptcy Code." See *In re Great Spa Manufacturing Company, Inc.*, 2009 WL 1457740, *6 (Bankr. E.D. Tenn. May 22, 2009). The bankruptcy court concluded that CapTran's claim against Blackburn and Blackburn's defenses to that claim derive from the parties' pre-petition contract and state law and not from rights created by the Bankruptcy Code, and, therefore, "there was no ***inherent conflict*** between the arbitration sought by CapTran and the Bankruptcy Code." (emphasis added)

The background law governing the issue before the Court is the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, enacted in 1925 as a response to judicial hostility to arbitration. *AT&T Mobility LLC v. Concepcion,* ___ U.S. ___, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). The FAA provides:

5

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Citing 9 U.S.C. § 2, the Supreme Court in *CompuCredit Corp. v. Greenwood*, --U.S.—, 132 S.Ct. 665, 668 -669 (2012)[3], explains:

> This provision establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See also, *e.g., Concepcion, supra,* at ——, 131 S.Ct., at 1745; *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). It requires courts to enforce agreements to arbitrate according to their terms. See *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been "overridden by a contrary congressional command." *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). See also *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

*CompuCredit* involved a cause of action for a violation of the Credit Repair Organization Act, §405(a), 15 U.S.C. §§ 1679c(a), 1679f(a).("CROA"). In *CompuCredit,* the Supreme Court held that "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced according to its terms." *Id*. at 673. Likewise in this case, because the Bankruptcy Code is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA also requires the arbitration agreement to be enforced according to its terms, and there is no need to apply an "inherent conflict" test.

---

[3] It should be noted that CompCredit was decided after *In re Eber,* and obviously after *In re White Mountain Mining.*

*CONCLUSION*

Based upon the foregoing reasons, it is hereby **ORDERED** that the Debtor-Appellant's appeal is **DISMISSED**.

So ordered.

ENTER:

                                              s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE